J. E. Hurley v. Commissioner.
Hurley v. Commissioner
Docket No. 6747.
United States Tax Court
1947 Tax Ct. Memo LEXIS 312; 6 T.C.M. (CCH) 128; T.C.M. (RIA) 47027; February 11, 1947
*312 Partnership. - Held, that for federal tax purposes there was no bona fide partnership between petitioner and his wife during 1940 and 1941. W. W. Findley, C.P.A., Little Rock, Ark., for the petitioner. Stanley B. Anderson, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: The respondent determined deficiencies in petitioner's income taxes in the amounts of $4,325.68 and $1,779.86 for the calendar years 1940 and 1941, respectively, and, also determined a five per cent penalty in the amount of $88.99 for the year 1941, because petitioner's return for that year was not filed within the time prescribed by law. The sole issue, for both years, is whether respondent erred in not recognizing, for federal tax purposes, an alleged partnership between petitioner and his wife and, as a result thereof, increasing the petitioner's reported net income by $14,835.99 for 1940, and $8,423.35 for 1941, which amounts had been reported on returns filed by Emma Mae Hurley for those years as her share of the net income of the business operated under the name of the Hurley Lumber Company The petitioner has raised no issue as to the imposition *313 of the five per cent penalty. Findings of Fact The petitioner is a resident of Arkansas, with his principal place of business at Warren, Arkansas. Prior to May 1940 petitioner had been employed by Southern Lumber Company, a manufacturer of lumber, at Warren, Arkansas for a period of 19 years, the last 10 years of which he was general sales manager in charge of approximately 65 salesmen, some wholesalers, and some commission men, all of whom sold the products of the Southern Lumber Company. That company produced lumber which was sold to the retail trade, railroads and industries, located in various states. Through his employment by that company petitioner acquired knowledge as to the different grades of lumber and the business of selling lumber. When petitioner left the employment of the Southern Lumber Company on May 1, 1940, he decided to remain in the business of selling lumber and on the same date he and his wife, Emma Mae Hurley, entered into an agreement to operate a wholesale lumber business under the name of the Hurley Lumber Company. The petitioner agreed to contribute his services and manage the business and Emma Mae Hurley agreed to contribute $1,200 to the enterprise. *314 Since Emma Mae Hurley's marriage to petitioner her occupation has been homemaker and mother, and, in 1940 their three children were fifteen, eleven and eight years of age, respectively. "Over a period of years" Emma Mae Hurley had maintained a savings account in the Merchants and Planters Bank of Warren, Arkansas, and on May 1, 1940 her savings deposited in that account totaled $1,200. Emma Mae accumulated such savings from undisclosed amounts given at undisclosed times to Emma Mae by petitioner out of his bonus checks, from $25 donated to her by a church as organist, and from $15 per month salary for an undisclosed number of months paid by check to petitioner as secretary to a school board, all of whose meetings were attended by petitioner; the check or checks having been turned over by petitioner to Emma Mae, because she performed the work on the school board records at home. In May 1940, petitioner owned $2,500 par value stock of the Southern Lumber Company, which was at that time in the hands of the Merchants and Planters Bank as security for a loan made to him in December 1939 in the amount of $1,500. Such sum was loaned by petitioner to the Star City Lumber Company on its *315 unsecured note and that company repaid petitioner by cash of $1,000 and the balance in lumber, which petitioner sold. Petitioner repaid his indebtedness to the Merchants and Planters Bank by payments of $500 on March 27, 1940, $500 on April 3, 1940 and $500 in July 1940. In May 1940, the petitioner had about $100 in his checking account and an open line of bank credit in the amount of $300. On May 31, 1940, Emma Mae Hurley withdrew $1,200 from her savings account and such sum was deposited to the bank account of the Hurley Lumber Company and was used from May 31 to July 3, 1940 to pay for, or on purchases of lumber by the lumber company and for various expenses of the business of that company. The wholesale lumber business of the Hurley Lumber Company consisted of petitioner's activities: In securing orders for lumber from industrial concerns and the retail trade through correspondence and personal contacts; in placing such orders with a lumber mill which shipped directly to the lumber company's customers on invoices to the Hurley Lumber Company; in checking with the mill and the customers to see if correct deliveries were made; in the signing of bills of lading where shipments were *316 by rail; in making payment within 10 days to the mill of the customary 80 per cent of the mill's invoice price; and in making payment to the mill of the balance due upon receipt of payment from the lumber company's customers. Petitioner conducted the business alone until July 1940, when he employed T. B. Rice to keep records. In October 1940 he employed two girls during the rush period to do typing. The petitioner's wife rendered no service to the Hurley Lumber Company during 1940 or 1941. During 1940 and 1941 the Hurley Lumber Company had no lumber yard, kept no lumber inventory, had no trucks or equipment and other than office equipment had no physical assets; and it did not set up or maintain any capital or investment accounts nor any withdrawal accounts. Sometime during 1940 and after the original $1,200 put into the business had been expended the Hurley Lumber Company adopted the practice of assigning its invoices to the Merchants and Planters Bank to secure loans of 75 per cent of the amount due the lumber mill on its invoices and used the amount of the loans as part of the 80 per cent which it paid the mill within 10 days after receiving the mill's invoices. The customer paid *317 for the lumber by check drawn jointly to the Merchants and Planters Bank and the Hurley Lumber Company and thereafter the latter paid the balance due from it to the mill. From May to September 1940, the petitioner made sales for the Hurley Lumber Company of approximately 1,000,000 feet of lumber to the industrial and retail trades. In September 1940, the Hurley Lumber Company through petitioner obtained its first United States Government order for approximately 3,000,000 feet of lumber and in October 1940, it likewise obtained a second Government order for 10,000,000 feet of lumber. During 1940 and 1941, the Hurley Lumber Company made a profit of approximately five per cent on lumber sales. During the years 1940 and 1941, the petitioner made some commission sales of lumber on his own personal account and the Hurley Lumber Company did not share in his commissions earned therefrom. During 1940 and 1941, petitioner made withdrawals, from time to time, of some portion of the profits of the Hurley Lumber Company and such moneys were deposited in his checking account. To some extent petitioner contributed to the payment of household expenses. During 1940 and 1941, Emma Mae made various *318 withdrawals of cash from the Hurley Lumber Company, usually by calling the office and asking that a certain amount be deposited in her individual checking account and she was free to use such funds as she desired. During 1940 and 1941, Emma Mae contributed a certain amount of money to household expenditures; purchased a diamond ring; and expended substantial amounts for furniture, hardware and the addition of a room on to the house in which petitioner and his family lived. Opinion The testimony herein is that petitioner and his wife entered into an agreement in May 1940 to operate a wholesale lumber business under the name of Hurley Lumber Company; that she contributed to the venture a sum of $1,200 from her savings account accumulated "over a period of years", principally out of funds given her by petitioner at various undisclosed times; that she contributed no services to the business; and that petitioner managed the business and contributed all the services necessary to the operation of the business except those rendered by employees. While petitioner testified that he signed a partnership agreement on May 1, 1940, no written agreement was placed in evidence. No evidence was *319 offered as to how the profits of the business were to be shared by petitioner and his wife, or, as to whether she was to share the losses, if any. No capital account or withdrawal accounts were set up during 1940 and 1941, and there is no evidence of the amounts of certain withdrawals made by petitioner and his wife from the profits of the business. However, the wife expended substantial amounts, out of her withdrawals, for household expenses, furniture, and improvements on the house in which they lived, while petitioner participated to some extent in payment of household expenses. The record shows that the business had no physical assets other than office equipment and that it was financed principally by bank loans secured by invoices on lumber shipments. It further shows that the operation of the business involved primarily the personal services of the petitioner in obtaining orders for lumber; in placing such orders with lumber mills for shipment directly to its customers on invoices rendered to the Hurley Lumber Company; in checking up on the shipments and deliveries; in making payment to the lumber mills; in collecting from customers; and in having complete control and management *320 of the business. While we have found as facts that the amount of $1,200 contributed by petitioner's wife to the business of the Hurley Lumber Company had been saved by her during "a period of years", as testified by her, and that all of that amount except $25 and an amount of $15 per month for an undisclosed number of months had been given to petitioner's wife from bonus checks of petitioner, the record is devoid of any proof showing either: (1) What number of gifts were made from the bonus checks; (2) what amount was embraced in each of such gifts, if more than one, or, if only one, what amount was embraced in that one; (3) at what specific times the various gifts, if more than one, were made or, if only one, at what specific time such gift was made; or (4) whether or not there were any conditions imposed with reference to the use of such gift, or gifts. We are consequently left in ignorance of vital facts and circumtances pertinent to the question of whether the agreement between the petitioner and his wife constituted a bona fide partnership for federal tax purposes. For all we know all, or the major portion in amount, of the gifts from the husband from his bonus checks included *321 in the $1,200 savings of his wife through "a period of years" may have been made on or near May 1, 1940, when the petitioner left the employment of the Southern Lumber Company and agreed with his wife on the formation of the claimed partnership and with the understanding between them that the amount or amounts of the gifts was or were to be invested in the business of the Hurley Lumber Company; and for that matter such an understanding may have existed, so far as we know, at any time, or times, the gift or gifts were made. Under these facts and circumstances we are unable to say that the investment by the wife in the Hurley Lumber Company of that part of the $1,200 comprised of gifts from her husband constituted an investment originating with her rather than with petitioner. It follows that the income here involved was earned by petitioner through his personal services and through capital not shown to have originated with his wife. We, therefore, hold under authority of ; and , and related cases, that the record fails to establish a bona fide partnership between petitioner and his wife *322 for federal tax purposes. In so holding we have ignored as negligible and inconsequential the amounts of $25 and some portion of $15 per month for an undisclosed number of months, which may be said to have been earned by petitioner's wife and consequently to have been her funds invested in the business. It may be further said that whatever additional facts with reference to the gifts from petitioner to his wife may be, she would in no event be a partner for federal tax purposes in the Hurley Lumber Company to the extent of a 50 per cent interest therein. Cf. . The respondent did not err in his determination that for federal tax purposes there was no bona fide partnership between the petitioner and his wife during 1940 and 1941 and that the entire net income of the business conducted under the name of Hurley Lumber Company was taxable to petitioner for each of those years. Decision will be entered for the Respondent.